# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**UNITED STATES OF AMERICA,**

      v.                                        Criminal Action No. 2:12cr36

**WILLIAM JOSEPH RUSSELL,**

    **Defendant.**

## ORDER/OPINION REGARDING PLEA OF GUILTY

This matter has been referred to the undersigned Magistrate Judge by the District Court for purposes of conducting proceedings pursuant to Federal Rule of Criminal Procedure 11. Defendant, William Joseph Russell, in person and by counsel, Dwight R. Hall, appeared on February 7, 2013. The Government appeared by Stephen Warner, its Assistant United States Attorney.

The Court determined that Defendant was prepared to enter a plea of "Guilty" to Count Three of the Indictment. Thereupon, the Court proceeded with the Rule 11 proceeding by first placing Defendant under oath. The Court determined that Defendant's plea was pursuant to a written plea agreement, and asked the Government to tender the original to the Court. The Court asked counsel for the Government to summarize the written Plea Agreement. Defendant stated the agreement as summarized by counsel for the Government was correct and complied with his understanding of the same. The Court **ORDERED** the written Plea Agreement filed.

The Court next inquired of Defendant concerning his understanding of his right to have an Article III Judge hear the entry of his guilty plea and his understanding of the difference between an Article III Judge and a Magistrate Judge. Defendant stated in open court that he voluntarily waived his right to have an Article III Judge hear and accept his plea and voluntarily consented to the undersigned Magistrate Judge hearing and accepting his plea, and tendered to the Court a written Waiver of Article III Judge and Consent To Enter Guilty Plea Before Magistrate Judge, which waiver and consent was

signed by Defendant and countersigned by Defendant's counsel and was concurred in by the signature of the Assistant United States Attorney appearing.

Upon consideration of the sworn testimony of Defendant, as well as the representations of his counsel and the representations of the Government, the Court finds that the oral and written waiver of Article III Judge and consent to enter guilty plea before a Magistrate Judge was freely and voluntarily given and the written waiver and consent was freely and voluntarily executed by Defendant, William Joseph Russell, only after having had his rights fully explained to him and having a full understanding of those rights through consultation with his counsel, as well as through questioning by the Court. The Court **ORDERED** the written Waiver and Consent to Enter Guilty Plea before a Magistrate Judge filed and made part of the record.

The undersigned Magistrate Judge examined Defendant relative to his knowledgeable and voluntary execution of the written plea bargain agreement signed by him, and determined the entry into said written plea bargain agreement was both knowledgeable and voluntary on the part of Defendant. The undersigned inquired of Defendant regarding his understanding of the written plea agreement. Defendant stated he understood the terms of the written plea agreement and also stated that it contained the whole of his agreement with the Government and no promises or representations were made to him by the Government other than those terms contained in the written plea agreement.

The undersigned reviewed with Defendant Count Three of the Indictment, including the elements the United States would have to prove at trial, charging him with aiding and abetting in the possession of material used in the manufacture of methamphetamine. From said review the undersigned Magistrate Judge determined Defendant understood the nature of the charge pending against him.

The undersigned then reviewed with Defendant and determined Defendant understood the possible statutory maximum sentence which could be imposed upon his conviction or adjudication of guilty on that charge was imprisonment for a term of not more than ten (10) years; understood that a fine of not more than $250,000.00 could be imposed; understood that both fine and imprisonment could be imposed; understood he would be subject to up to three (3) years of supervised release; and understood the Court would impose a special mandatory assessment of $100.00 for the felony conviction payable within 40 days following entry of his guilty plea. He also understood that his sentence could be increased if he had a prior firearm offense, violent felony, or drug conviction. He also understood he might be required by the Court to pay the costs of his incarceration and supervised release.

The undersigned also reviewed with Defendant his conditional waiver of appellate rights as follows:

Ct: Did you each[1] discuss with your lawyer and did you understand from that discussion that you have a right to appeal your conviction and sentence to the Fourth Circuit Court of Appeals by filing that appeal within 14 days of District Judge Bailey's announcement of that sentence at sentencing?

Def: Yes, your Honor.

Ct: Did you each discuss with your lawyer and did you understand from that discussion that you may collaterally attack your sentence and how that sentence is being carried out at the prison

---

[1] Defendant and his co-defendant, Kelley Leigh Cohenour, appeared at the same hearing, and each answered the same questions in this colloquy. Only Defendant Russell's responses are recited in this Order.

you may be assigned to, by filing a writ of habeas corpus-type motion under 28 USC Section 2255?

Def: I've got a question of my lawyer.

(Consults with lawyer)

Def: All right. Yes, sir.

Ct: Now, do you each understand that under paragraph 16 of your written plea agreement, that if the district judge imposes a sentence which is consistent with a guideline sentence which has a total adjusted guideline level of 27 or lower, then you give up your right to directly appeal that actual sentence, and you give up your right to collaterally attack or challenge that sentence by filing what we commonly call a habeas corpus motion?

Def: Yes, sir.

Ct: Did you each understand and do you want to give up your rights in accord with paragraph 16 of your respective plea agreements to these valuable direct appeal and collateral attacks?

Def: Yes, sir.

From the foregoing colloquy the undersigned determined that Defendant understood his appellate rights and knowingly gave up those rights pursuant to the conditions in the written plea bargain agreement.

The undersigned Magistrate Judge inquired of Defendant, his counsel, and the Government as to the non-binding recommendations and stipulations contained in the written plea bargain agreement and determined that Defendant understood, with respect to the plea bargain agreement and to Defendant's entry of a plea of guilty to the felony charge contained in Count Three of the Indictment, the undersigned Magistrate Judge would write the subject Order and would further order a pre-sentence

investigation report be prepared by the probation officer attending the District Court, and only after the District Court had an opportunity to review the pre-sentence investigation report, would the District Court adjudicate the Defendant guilty of the felony offense contained in Count Three of the Indictment and make a determination as to whether to accept or reject any recommendation or stipulation contained within the plea agreement or pre-sentence report. The undersigned reiterated to the Defendant that the District Judge may not agree with the recommendations or stipulations contained in the written agreement. The undersigned Magistrate Judge further advised Defendant, in accord with Federal Rule of Criminal Procedure 11, that in the event the District Court Judge refused to follow the non-binding recommendations or stipulations contained in the written plea agreement and/or sentenced him to a sentence which was different from that which he expected, he would not be permitted to withdraw his guilty plea. Defendant understood that he, unlike his co-defendant, was not being considered for a safety valve dreduction. He also understood that even if the Court recommends he be admitted into the Residential Drug Abuse Program, this was only a recommendation that does not bind the Bureau of Prisons.

Defendant also understood that his actual sentence could not be calculated until after a pre-sentence report was prepared and a sentencing hearing conducted. The undersigned also advised, and Defendant stated that he understood, that the Sentencing Guidelines are no longer mandatory, and that, even if the District Judge did not follow the Sentencing Guidelines or sentenced him to a higher sentence within the statutory maximum than he expected, he would not be permitted to withdraw his guilty plea. Defendant further understood there was no parole in the federal system, although he may be able to earn institutional good time, and that good time was not controlled by the Court, but by the Federal Bureau of Prisons.

Thereupon, Defendant, William Joseph Russell, with the consent of his counsel, Dwight R. Hall, proceeded to enter a verbal plea of **GUILTY** to the felony charge contained in Count Three of the Indictment.

The Court heard the testimony of West Virginia State Trooper Mark Agee, who testified he knew Defendant and his co-defendant Kelley Leigh Cohenour. He executed a search warrant at their residence (at the time) in Pocahontas County, West Virginia, on October 13, 2011. The object of the search was to locate evidence of a methamphetamine lab. Pursuant to the search warrant, officers did find materials consistent with the manufacture of methamphetamine. Inside the house they found syringes, rubber tubing, and other items, while in the trash they found Gatoraid bottles, cut lithium batteries, cold-packs, and empty Sudafed packages.

Trooper Agee testified that each defendant made a statement. Cohenour stated that she lived with Defendant Russell. Russell asked her to buy Sudafed and she did. She knew it was for the purpose of making methamphetamine, with the exception of one occasion where she bought it for a cold. She said she did not cook meth, but she did use it. She never saw Russell cook it, but saw the finished product and injected it with him. She believed he probably cooked meth 15-20 times in a month. It was her drug of choice.

Defendant Russell stated to Trooper Agee that he did make methamphetamine in small amounts, from 1/4 to ½ gram at a time. He explained how he cooked it and what he used. He said the materials found in the trash were from methamphetamine cooks. He stated he used the shake and bake method of manufacturing meth. Occasionally other people bought Sudafed for him to be used in making meth.

Trooper Agee testified that records showed Cohenour purchased pseudoephedrine on October 3 and October 7 from Rite Aid and on October 11 from WalMart. Russell purchased pseudoephedrine on October 5 from Pocahontas Pharmacy.

Defendant stated he heard, understood and agreed with Trooper Agee's testimony, except that he disagreed with the amount of times the witness stated he had cooked methamphetamine in a month. The amount of times Defendant manufactured meth not being necessary to Count Three, the undersigned United States Magistrate Judge notes Defendant's disagreement, but concludes Defendant's plea of guilty to the offense charged in Count Three of the Indictment is supported by the testimony of Trooper Agee.

The undersigned then reviewed with Defendant, and determined that Defendant understood and agreed that, although the parties had stipulated that the shake and bake method of cooking methamphetamine had been used, and although they had stipulated that method involves the use of dangerous chemicals and is highly explosive, the parties do not agree whether the offense created a substantial risk of harm to human life and/or to the environment. Defendant understood and agreed that it will therefore be up to the District Judge to decide whether the offense created such a substantial risk.

Upon consideration of all of the above, the undersigned Magistrate Judge finds that Defendant is fully competent and capable of entering an informed plea; Defendant is aware of and understood his right to have an Article III Judge hear and accept his plea and elected to voluntarily consent to the undersigned United States Magistrate Judge hearing and accepting his plea; Defendant understood the charges against him, not only as to the Indictment as a whole, but in particular as to Count Three of the Indictment; Defendant understood the consequences of his plea of guilty, including the maximum statutory penalty; Defendant made a knowing and voluntary plea of guilty to Count Three of the Indictment; and Defendant's plea is independently supported by the testimony of Trooper Agee, which provides, beyond a reasonable doubt, proof of each of the essential elements of the charge to which Defendant has pled guilty.

The undersigned Magistrate Judge therefore **ACCEPTS** Defendant's plea of guilty to the felony charge contained Count Three of the Indictment and recommends he be adjudged guilty on said charge as contained in Count Three of the Indictment and have sentence imposed accordingly.

The undersigned further directs that a pre-sentence investigation report be prepared by the adult probation officer assigned to this case.

Defendant is continued on release pursuant to an Order Setting Conditions of Release previously entered in this case.

It is so **ORDERED**.

The Clerk of the Court is directed to send a copy of this Order to counsel of record.

DATED: February 8, 2013.

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE